Good morning, Your Honors, and may it please the Court. My name is Carol Villegas from Labiton-Sucharo, and I represent the Public Employees Retirement Association of New Mexico. I'd like to reserve three minutes of rebuttal time, please. We represent the Retirement Association of New Mexico, also called PARA, as well as a class of investors who brought claims against PG&E, its officers and directors, and underwriters for making false and misleading statements about safety protocols and procedures, or lack thereof, that led to the devastating wildfires in California and which led to the loss of billions of dollars to investors. The claims against PG&E were removed to bankruptcy court, and PG&E is not a party to the district court case against 40 non-debtor defendants and is also not a party to this appeal. The facts in the district court date back at least eight years. The district court case was filed over five years ago. The motions to dismiss this case have been fully briefed and pending for three years and seven months, and the notice of intent to stay was issued two and a half years ago. We are many years away from resolution in the bankruptcy, which, because of the district court stay, stands in the way of our claims against the non-debtor defendants ever being heard. The class members who we represent and who we have a fiduciary duty to protect and who have not filed any claims in the bankruptcy are 100 percent fully and completely out of court at this time. Do your clients have the ability to pursue any relief in the bankruptcy court through the ADR process? No, Your Honor, they do not, because the bar date passed many years ago for them to file a claim, and they cannot file any claims in the bankruptcy now. And why did they not file a claim within the bankruptcy context? Well, the bar date was actually set two weeks into the pandemic when there was a lockdown, so many of these investors did not even get notice of the bar date, Your Honor. And beyond that, there could be many reasons why an investor may choose not to file a claim in a bankruptcy action, including that they would potentially have to hire their own lawyer to proceed with the claim. And if the claim was small enough in dollar amount, that might not make sense, which is why they may want to proceed with a class action. And that's why class actions were developed potentially to protect shareholders in this instance where it might not make sense to bring your own claim in a bankruptcy court, which, as you know, can be very complicated, long, and drawn out. So these particular clients of ours have no recourse to litigate the viable claims that they have asserted in the district court against, as I mentioned, 40 non-debtor defendants. They can't by definition be litigated in the bankruptcy court because the non-debtor defendants, they're just not defendants in the bankruptcy court. We argue that the district court abused its discretion in three ways. First, the district court abdicated its exclusive jurisdiction. Second, the district court applied the wrong legal standard when considering the stay. And third, the district court failed to consider the uncontroverted evidence before it. The legal question before you is, which court has the jurisdiction and authority to hear the claims against the non-debtors, and which court should be adjudicating these claims? We believe the controlling case law here in the Ninth Circuit is the Silberkleit case. In considering a similar stay, the court clearly decided in the Silberkleit case that a district court cannot abdicate its authority or duty in favor of another jurisdiction, stating that a stay order must be consistent with what the Supreme Court in Colorado River called the virtually unflagging obligation of the Federal courts to exercise the jurisdiction given to them. Silberkleit is really instructive here, because it dealt with 34 Act claims, just like the claims in this case, and the underlying district court order saying the case in Silberkleit was actually based on a really similar rationale to the one that Judge Davila gave in this case, which is the desire to avoid duplicative litigation that could resolve or limit issues to be decided with actions that have similar claims. Silberkleit clearly found the district court had absolutely no discretion, no discretion, to stay proceedings on claims which are exclusively Federal claims. Relying on the Supreme Court holding in the Moses Cone case where the Supreme Court said a stay is as much a refusal to exercise Federal jurisdiction as a dismissal, even if the case may someday come back to the district court. Well, of course, there's limits to that, right? Because, of course, district courts have the authority to grant stays, and there's lots of cases and examples where they do that when there's other litigation pending in some other forum that in some way relates. So it's a matter of degree, right? I mean, your argument has to be, it seems to me, that it's not the fact that a stay was entered, but it's the fact that this is a really long stay, it seems. Yes, Your Honor, absolutely. I mean, I think the abdication point is important, and it might be a different situation if you had the claims against the non-debtors also in the bankruptcy and that there was an avenue for our clients to pursue their claims. But you are correct. The first point we're making is abdication. There's no way that the bankruptcy court could ever hear the claims against the non-debtors, and then you get to the prejudice, which is the length of time that our clients are going to effectively be out of court. Our argument, though, is you don't even need to get to the prejudice. You can look at the situation that we have here in the district court where the district court essentially is going to have to decide these issues against the non-debtors someday. And so there's no reason for them to be abdicating that to the bankruptcy court. But when you say they would have to, I think your adversaries say that in the bankruptcy court, the settlement ADR, if I read their brief correctly, all of those settlements end up releasing the claims against the non-debtor defendants. Yes, Your Honor, and maybe that's true, but that doesn't help all of the claimants in the district court who never filed a claim in the bankruptcy court. So by definition, their claim can never be released in the bankruptcy court. No matter what happens in the bankruptcy court, you're going to have a group, a class of plaintiffs in the district court who need to have their claims heard one day. You're running close up to the time that you want to reserve. Can you give me some sense, I can't quite figure out, what is the financial risk that your clients are facing from the delay? Well, Your Honor, this is a claim worth billions of dollars against PG&E, the officers, directors, and underwriters. Some of the other prejudice that we mention is, obviously, with the delay, we're going to suffer potential loss of evidence, not just by PG&E, but by third parties. I get that, but I'm trying to figure — there was an argument in the briefing about there's, you know, a limited pool of insurance money, and the longer this delay goes on, that money is going to dwindle, and then perhaps the litigants and the plaintiffs in the district court action are going to have no money to recover from at the end of the day. Absolutely, Your Honor, that's true. And I think the Blue Cross case accurately identified that that is one of the real prejudices that our client will be suffering by a delay. But practically, who else is getting the insurance money? These are directors and officers, largely. They have D&O insurance. Are other people suing them in other courts? So, Your Honor, I think we mentioned in our papers that there was a derivative action that has already taken over $100 million of that insurance, and obviously we have a wasting policy with a lot of litigation going on in both the bankruptcy court and, hopefully, in the district court in the future if the stay is vacated. Where was that other action? I believe that action was also in California, Your Honor. And, of course, remember the fire victims. The litigation there went on for a very long time in the bankruptcy as well. I'll reserve my time. Thank you, Your Honor. Judge Wallace, do you have any questions at this point? No, thank you. Okay. All right. We'll hear from the appellees. Mr. Blake. Good morning, Your Honors. May it please the Court, Stephen Blake from Simpson-Thatcher on behalf of appellees. It's always a pleasure to be in the Ninth Circuit. It's a double pleasure for us today because it is what the folks in my office have finally called Simpson-Thatcher Day at the Ninth Circuit. One of my associates, Ms. McConaughey, is going to be arguing for appellees in the Penton appeal after the break. So it's a doubleheader for us today. A couple of points just to level-set, Your Honor. We're dealing with a situation where the appellants, before the stay in the district court was entered into, told the district court that this was a, quote, unique or near-unique situation. And that's because we're dealing with two different parallel proceedings. Both are in federal court, one in federal district court, one in federal bankruptcy court. In federal district court, there's a putative class action. It's not been certified as a class action, but the appellants, Parra and York County, are pension funds. They're plaintiffs. They brought the action on behalf of a class. But then we also have 8,000 individual securities claims from securities claimants who put their hand up, asserted claims, hired counsel, and are litigating them in the bankruptcy court. And they're litigating them against the primary defendant that you would assert a securities claim, the company that made the allegedly false and misleading statements. And so, in this context, you know, there's a lot of cases that say, you know, you can stay when there's a pendency of a bankruptcy. This isn't even really your traditional bankruptcy-type stay because PG&E has emerged from bankruptcy. It's a solvent debtor, and it is actively litigating and defending those claims in the bankruptcy process. So that is a situation that the district court looked at. You have individual plaintiffs in the district court who are seeking to assert a class claim, and you have 8,000 claimants in the bankruptcy court who are standing up and asserting claims directly on behalf of their interest. And that includes the appellants. The appellants claim that they are out of court and shut out of the bankruptcy process. That's just not accurate. They filed last week, and the court may have seen it in the papers, a request for judicial notice. And a request for judicial notice related to a proceeding that is pending in the bankruptcy court right now in which the appellants are seeking to certify a class and proceed on behalf of a class in the bankruptcy court. There's something that I'm a little bit confused about in terms of your position here today, and that is, my understanding is your client didn't ask for a stay in the district court, and there's good reason why maybe you wouldn't want one. You've got a pending motion to dismiss. Maybe you want that decided. So I guess I'm a little curious, how hard are you fighting that, right? Like, why is it that you want this stay to stay in place given that it wasn't your idea? You didn't ask the district court to do this. The district court acted on its own. And you have something to lose here, too. We believe that we filed a meritorious motion to dismiss. And if the district court was to hear it, we believe that we would win. That being said, the district court looked at this very dynamic situation and made a case management determination. And that determination was that the individual claims advancing in the bankruptcy and the litigation there would advance the ultimate litigation of the district court case. And it's interesting. I mean, securities class actions were often trying to triangulate what the actual harm with shareholders were because it depends at very minute details on when you bought shares, when you sold shares, what your positions were, et cetera. There is actually 8,000 individual claims that have individual trading records and individual damages associated with them that are proceeding through the bankruptcy process. Well, you keep saying this 8,000 because it is a big number, but I want to be clear. Your adversary very specifically said that her clients have not made claims in the bankruptcy court. And you seem to say to the contrary, or at least I thought I heard you. So is that a point of contention or am I just making a linguistic difference? I guess it's a question of who their clients are. Their clients are the Public Employees Retirement System of New Mexico and the York County Retirement System. They are seeking to proceed on behalf of a putative class, but there has not been a class that has been certified in the district. And so are you saying that some of the members of the retirement plans have brought individual claims? I'm saying the retirement funds themselves that are the appellants in this case have brought individual claims in the bankruptcy. And that seems to be exactly contrary to what she said. Is that correct? I'm trying to see whether I'm hearing wrong or you're using different language or whether we have a flat contradiction about where those claims are. Because as I understand their argument is they've got this separate litigation that's going on and yes, it involves PG&E directors and officers, but it's a completely separate litigation. Now, exactly how are you contradicting her? Maybe perhaps it is a linguistic difference. I think it's a technical legal difference, which is the funds that are the appellants here are proceeding in the bankruptcy court. I think that's unquestionable. In what way? They have asserted claims against PG&E in the bankruptcy. In the name of the public employees' retirement? Correct. They have also in the bankruptcy sought to represent all of the remaining bankruptcy claimants for class treatment. And yesterday Judge Montali said that he was going to entertain that motion. A class action in the context of the bankruptcy. So from my perspective it's not a situation where they are effectively out of court. They are very much in court and participating. Except in bankruptcy they're in court as to PG&E but not as to the directors and officers. And you can have separate claims for those different defendants, right? That is correct, Your Honor. But then the question in terms of the district court's discussion is whether the active proceedings in the bankruptcy court are going to make ultimate litigation in the district court more efficient. And that is the determination that the district court made. It's up to that point. Sorry to cut you off. I mean I have to say I find the stay order in this case a little puzzling and I'm trying to figure out what is the efficiency given the relationship between bankruptcy courts and district courts and the fact that district courts have review authority over bankruptcy courts. What's the efficiency that we're even gaining here? Other than the district court doesn't have to do any work right now. You're dealing with claims on an individualized damage basis and resolving claims in that way as opposed to dealing with all the machinations that you need to do with a class action. And, you know, the plaintiffs or the appellants have said specifically that they expect the bankruptcy court to be ruling on identical issues. And the district court's ruling wasn't just about efficiency. It was also about avoiding inconsistent rulings and it was also about a recognition that these individualized claims in the bankruptcy would inherently transfer to releases or offsets of damages in the district court case. The appellants put a lot of emphasis on the Silvercrest case which they say is applicable here. They also talk a fair amount about the Moses-Cohen doctrine. They're not really asking to proceed here on the basis of the Moses-Cohen doctrine, however. Both Silvercrest and Moses-Cohen deal with a specific situation, a kind of Colorado type Colorado River type extension where the parallel proceeding is in state court and would moot the federal court action. And in that context Moses-Cohen and some of the cases that follow it said that would be an abdication of federal jurisdiction. We would contend that what Your Honor should look at is the Stanley case which is a 2014 case. It's the last time that this court has spoken on the Moses-Cohen doctrine type of cases. And the Stanley case is looking at what I would consider to be an extension of Moses-Cohen which started with the Blue Cross case. There was a Blue Cross case and then there was a Davis case. And in both of those cases the court said it will take jurisdiction over an interlocutory appeal where there is a lengthy and indefinite stay. And the lengthy and indefinite stay case law, there are very, very different factual circumstances. Lengthy and indefinite there was for an ongoing criminal proceeding and for a question of when a schizophrenic defendant would be returned to competency. And the Davis case characterized it as more infinite. Why is this not lengthy and indefinite? He said to the conclusion of the bankruptcy proceedings which means the whole thing as near as I can tell, the earlier statement said until the conclusion of the ADR, which might still be lengthy but might be less. But his stay, how can you say it's not lengthy and indefinite? It's totally indefinite. I won't dispute, Judge Boggs, that it's lengthy. I guess the question is whether it's indefinite. And what the Stanley case looked at was these very amorphous indeterminate stays. And it said really you need to center on the Moses Cone Doctrine itself, which is a question of whether this is an abdication. It's not an abdication here because plaintiffs could go back to the district court today and ask the district court to revisit it. And it's not an abdication because the district court contemplates that at the end of  ADR proceeding, that plaintiffs will come back and litigation in the district court. Thank you, Your Honor. Appreciate your time. Judge Wallace, do you have any questions? Yes, I have a question. All right. Counsel, can you come back? I have a question. Do I have a lawyer? You do. All right. All of us who have been district court judges deal with this issue all the time. You have more work to do than you can possibly do. And you always have things in the And so the Court of Appeals has developed factors that we look at. And every district court judge knows that you go to these factors and that's the way that you run your ship. But as near as I can tell here, the district judge was oblivious to those factors. It seems to me that we've given some help that he has not used. And if those factors have not been followed, and apparently all of them have not been followed, as near as I can tell from the briefs, why don't we vacate it and send it back for him to do the type of work that the Court of Appeals has suggested the district court do? Trying to develop a program recognizing the great amount of work district court judges still there are certain factors they have to follow. I think that is certainly something that you could do, Your Honors, which would be remand with instructions. I think if you look at the combination Do you agree that the district court did not follow all of the factors? I think when you look at the combination of the record at 3 and at 118, which is both the notice of intent to stay as well as the order to stay, you'll see that the district court did precisely the balancing of benefits and harms analysis. The court didn't do it in a factor-by-factor basis but the analysis, the core analysis is there. You're not answering my question. My question is there are certain factors clearly as I see the record the district court did not follow those factors but only followed 3. Should we not send it  work? I would say that that is certainly your prerogatives, Your Honor. You agree that he did not do so? I do not see the Landis factors laid out in the way you are articulating. Thank you. Thank you. Thank you, Your Honors. And just a point of clarification, you are correct. PARA did file a claim in the bankruptcy but the issue is really the directors and officers that are pending in the district court. The only court that has jurisdiction over those claims is the district court which is why we're saying that the court abdicated its responsibility. It's going to need to hear those claims. So you did PARA did file in the bankruptcy court so in principle you could get a pot of money which is roughly in the same vicinity as the pot of money you're trying to get directly. No, Your Honor, because the only clients that we represent in the bankruptcy are those that filed the bankruptcy claim. We still have a fiduciary duty to the people in the federal court. There are thousands of claimants in the federal court who don't have a claim in the bankruptcy. We can't share the money from the bankruptcy that we get there with them. So then the confusion was the words you were you at U.S. Council filed claims but not on behalf of the people that are in the district court. Plaintiffs and litigation. Correct, Your Honor. And it's important that it's a class action, right? We have the protections of Rule 34 and the private securities litigation reform act and that's obviously a big deal for our clients. So I just want to address a couple of points that were made. Obviously we think that the abdication point should stand but if the court wants to consider efficiency or whether res judicata could have any effect on the efficiency, we don't believe that it can. These claims aren't co-extensive. The underwriter claims and the D&O claims when you look at, you know, proving C enter, they're going to be different, a different factual record that gets made. There's no efficiencies to be gained. The bankruptcy court appeals to the district court for de novo review. So if anything, we're looking at a situation where it's completely inefficient. In terms of the cases that defense counsel raised, the Stanley case is really unique because it was a habeas petition that actually required exhaustion of State court remedies before going to Federal court. And I just want to Counsel, you're over time. Thank you, Your Honor. Judge Wallace, do you have any final questions? I'm good. So we're asking that you vacate the stay in remand to decide the motion to dismiss that's been pending for three years and seven months. Thank you, Your Honors. Thank you. Thank you. All right. The matter of public employee retirement association of New Mexico versus Earley is under advisement, and I thank counsel for your helpful arguments in this matter.
judges: WALLACE, Boggs, FORREST